IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SHIRLEY BROWN, Personal Representative for the Estate of NEAL JACKSON,<br><br>    Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>    Defendant. | **8:18CV273**<br><br>**MEMORANDUM AND ORDER** |

  Shirley Brown, as personal representative of the Estate of Neal Jackson, is suing Jackson's former employer, Union Pacific Railroad Company (UPRR), under the Federal Employers Liability Act (FELA) 45 U.S.C. § 51 *et seq.*, alleging Jackson's workplace exposure to hazardous materials caused or contributed to the development of colon cancer. (Filing No. 1, at CM/ECF p. 2). Jackson was diagnosed with and surgically treated for colon cancer in February 2008, (Filing No. 29-3), had additional surgery for his recurrent colon cancer in November 2014, (Filing No. 29-4), and passed away from his cancer June 17, 2015. (Filing No. 29-5). This lawsuit was filed on June 15, 2018, allegedly by Shirley Brown "acting as the Personal Representative of the Estate of her late father, Neal Jackson." (Filing No. 1, at CM/ECF p. 1, ¶ 4). UPRR moves for summary judgment, arguing Brown's lawsuit is time-barred by FELA's 3-year statute of limitations, (45 U.S.C. § 56), and Brown lacked standing to bring this lawsuit when it was filed. (Filing No. 27).

  For the reasons discussed below, Defendant's motion for summary judgment, (Filing No. 27), will be granted.

BACKGROUND

The complaint alleges exposure to "diesel fuel/fumes/benzene from the exhausts of the locomotives and on track equipment; creosote from rail ties and timbers; silica dust from railroad ballast and; asbestos from the trains' brake shoe dust and from asbestos rope which is soaked in gasoline and placed on the rails and lit to expand the rails prior to welding, was caused in whole or in part, or contributed to Decedent's colon cancer. ([Filing No. 1, at CM/ECF p. 2](#)). Brown's retained medical causation expert opines the that "Jackson developed suffered and died from metastatic adenocarcinoma caused by his extensive occupational exposure to a wide variety of substances such as asbestos dust and diesel fumes in his employ with Union Pacific Railroad." ([Filing No. 31-3, at CM/ECF p. 4](#)).

As set forth in the parties' briefs, the facts relevant to the state of limitations issues currently before the court are largely undisputed. (Compare [Filing No. 28, at CM/ECF pp. 3-6](#) (UPRR brief), with [Filing No. 30, at CM/ECF pp. 3-5](#) (Plaintiff brief)); (see also [Filing No. 32, at CM/ECF pp. 3-7](#)). Those facts, as identified by the parties, are as follows.

Jackson worked for Union Pacific from 1973 until September 13, 1993. Shirley Perrodin was Jackson's co-worker from 1976 to 1985. Perrodin is the sole source of Brown's information regarding Jackson's work activities and the comments Jackson made while performing that work. ([Filing No. 1, at CM/ECF p. 2](#), ¶ 7; [Filing No. 29-2, at CM/ECF pp. 2](#), 18; [Filing No. 29-7, at CM/ECF pp. 6](#),18).

As explained by Perrodin, Jackson and Perrodin nailed spikes, changed ties, dumped rocks out of cars, unloaded crossties, changed rails, shoveled rocks, and followed machines while performing their work for UPRR. ([Filing No. 29-7, at CM/ECF p. 6](#)). When Jackson unloaded crossties, the creosote on the ties burned his skin, the creosote odor caused headaches, and when the ties were in the hot sun, the creosote fumes burned his face. ([Id. at pp. 8-9, 17](#)). Jackson tried to wash

the creosote off when he got it on his skin because it burned. (Id. at 9). Jackson complained to his supervisors about his exposure to creosote because he knew it was harmful. (Id. at 12).

In addition to creosote, Jackson was exposed to billows of dust when ballast was dumped from rock cars. Jackson wore a handkerchief or old clothing over his mouth and nose to limit his exposure to the dust. Perrodin warned Jackson at the time that breathing the dust could be harmful. (Id. at 13-16).

When Jackson worked around diesel-powered machines, he would back away from the machines. Jackson knew diesel exhaust was harmful so he tried to get away from it. (Id. at 16-17).

Jackson was diagnosed with colon cancer in February 2008 and had surgery to remove a portion of his colon. (Filing No. 29-2, at CM/ECF p. 6; Filing No. 29-3). At that time, his healthcare providers explained there was a risk of recurrence of his colon cancer in the future. (Filing No. 29-2, at CM/ECF p. 7). A recurrence occurred in November 2014, and more of Jackson's colon was surgically removed. (Filing No. 29-2, at CM/ECF p. 7; Filing No. 29-4). But by then, the cancer had metastasized, and it ultimately caused his death on June 17, 2015. (Filing No. 29-2, at CM/ECF pp. 7-9; Filing No. 29-5). Brown did not discuss the cause of her father's cancer with either her father or his medical providers, and there are no facts suggesting Jackson ever knew or investigated the cause of his cancer. (Filing No. 29-2, at CM/ECF p. 11).

Brown filed this lawsuit on June 15, 2018. (Filing No. 1). Although the complaint alleges Brown filed suit in her capacity as personal representative for Jackson's Estate, she was not appointed as a personal representative until May 15, 2019. (Filing No. 1; Filing No. 29-2, at CM/ECF pp. 12-13; Filing No. 29-6).

STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. Id.

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Id. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. Id. But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. Id. In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. Quinn v. St. Louis Cty., 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. Barber v. C1 Truck Driver Training, LLC, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Torgerson, 643 F.3d at 1042.

DISCUSSION

UPRR argues Brown's claim for relief is barred by 45 U.S.C § 56, which provides that "No action shall be maintained under [FELA] unless commenced within three years from the day the cause of action accrued." But that statute incorporates a discovery rule: When an injury does not arise from a single traumatic event with immediate symptoms, but rather a latent one with symptoms appearing over time, the claim does not accrue until the employee is aware or should be aware of his condition. White v. Union Pac. R.R., 867 F. 3d 997, 1001 (8th Cir. 2017). And in addition to knowing of his condition, the employee must know – or have reason to know – the condition's cause. Id. Both components require an objective inquiry into when the plaintiff knew or should have known, in the exercise of reasonable diligence, the essential facts of injury and cause. Id. (citing Fries v. Chi. & Nw. Transp. Co., 909 F.2d 1092, 1095 (7th Cir. 1990).[1] See Smith v. BNSF Ry. Co., No. 4:17-CV-3062, 2018 WL 6529503, at *2 (D. Neb. Oct.

---

[1] There is a split of authority regarding the burden of proof in a FELA case when a defendant moves for summary judgment based on the statute of limitations. Compare Fonseca v. Consol. Rail Corp., 246 F.3d 585, 590-91 (6th Cir. 2001) (defendant has burden of proof on all affirmative defenses such as statute of limitations); with Johnson v. Norfolk & W. Ry. Co., 985 F.2d 553 (4th Cir. 1993), and Bealer v. Missouri Pac. R. Co., 951 F.2d 38, 39 (5th Cir. 1991) (because timeliness is essential element of plaintiff's claim, plaintiff bears burden of showing genuine factual dispute). For purposes of this motion, however, the Court assigns that burden to UPRR, because the discovery rule in FELA cases is a doctrine of accrual, not a tolling doctrine asserted in response to a statute of limitations defense. See Pharmacia Corp. Supplemental Pension Plan v. Weldon, 126 F. Supp. 3d 1061, 1074-75 (E.D. Mo. 2015); cf. Schmidt v. United States, 933 F.2d 639, 640 (8th Cir. 1991). Nonetheless, the issue of whether a suit is time-barred is a question of law, which properly may be resolved at the summary judgment stage if there are no genuine issues of material fact in dispute. In re Minn. Mut. Life Ins. Co. Sales Practices Litig., 346 F.3d 830, 835 (8th Cir. 2003); Hallgren v. U.S. Dep't of Energy, 331 F.3d 588, 589 (8th Cir. 2003).

5

16, 2018); see also McLaughlin v. BNSF Ry. Co., No. 4:18-CV-3047, 2019 WL 4855147, at *2 (D. Neb. Oct. 1, 2019)

Under FELA's discovery rule, UPRR has the burden of showing that Jackson knew or should have known "the essential facts" of injury and cause prior to June 15, 2015.[2] White, 867 F.3d at 1001. Under White, and the authorities upon which it relies, Jackson had an affirmative duty to reasonably inquire as to the cause of his cancer. White, 867 F.3d at 1001; see also Tolston v. Nat'l R.R. Passenger Corp., 102 F.3d 863, 865-66 (7th Cir. 1996) ("Just to be clear the [Fries] court added [that] this rule imposes on plaintiffs the affirmative duty to investigate the cause of a known injury"); Fries, 909 F.2d at 1095. To apply another rule would thwart the purposes of repose statutes which are designed to apportion the consequences of time between plaintiff and defendant and to preclude litigation of stale claims. Fries, 909 F.2d at 1095. And the suggestion, made by Brown, that only actual knowledge is enough to make a claim accrue under FELA has been repeatedly rejected by this and other courts. White, 867 F.3d at 1002-03; Tolston 102 F.3d at 866; Mclaughlin, 2019 WL 4855147, at *3; West v. Union Pac. R.R. Co., No. 8:17CV36, 2019 WL 7586542, at *1 (D. Neb. Dec. 20, 2019).

Here, it is undisputed that by February 2008, Jackson knew he had colon cancer. Jackson was informed of the diagnosis and was surgically treated for colon cancer in February of 2008. Brown asserts that a genuine question of material fact exists as to whether Jackson knew or should have known the cause of his colon cancer prior to June 15, 2015—three years before this lawsuit was filed.

Jackson worked for the railroad for 20 years—from 1973 until September 13, 1993. And as noted above, Perrodin is the sole source of any information of record regarding Jackson's work environment and Jackson's knowledge of potentially harmful exposures to substances at work. Perrodin worked with

---

[2] Three years before the lawsuit was filed.

Jackson from 1976 to 1985. Based on Perrodin's testimony, at least as early as 1985, Jackson knew that his exposure to substances at work had caused headaches and burns. Jackson complained to his supervisors about his exposure to chemicals and the potential harm that they may cause. And while working with Jackson, Perrodin warned Jackson that exposure to dust while working for the railroad was potentially harmful. Even if Jackson did not believe this warning, Perrodin's warning notified Jackson that work-related dust exposure could cause physical harm.

Armed with this notice and knowing the symptoms he experienced when exposed to substances at work, Jackson had a duty to inquire as to whether "his extensive occupational exposure to a wide variety of substances such as asbestos dust and diesel fumes in his employ with Union Pacific Railroad," (Filing No. 31-3, at CM/ECF p. 4 (Newman opinion)), caused or contributed to his development of colon cancer. Jackson had three years to investigate the causal connection, and he had a duty to do so or risk losing his ability to sue. 45 U.S.C § 56; White, 867 F.3d at 1002.

Brown argues that unlike this court's prior rulings, there is no evidence in this case that Jackson did not investigate the cause of his colon cancer – that "all we currently know is that the Decedent knew he had colon cancer and that he did not know the cause." But it is undisputed that well over three years before this lawsuit was filed, Jackson knew the essential facts necessary to impose a duty upon him to investigate any potential work-related cause of his cancer. Irrespective of whether he actually performed that investigation, under the facts of this case, Jackson's three-year time period to file suit began when he was told he had colon cancer.

Based on the undisputed facts, Jackson's claim expired in February of 2011—before Jackson's death on June 17, 2015. So, a cognizable wrongful death

7

action never existed. Brown's purported and derivative wrongful death claim is barred by the statute of limitations. Pope v. Union Pac. R.R. Co., No. 8:18CV421, 2019 WL 6615189 (D. Neb. Dec. 5, 2019).[3]

IT IS ORDERED:

1) UPRR's motion for summary judgment (Filing No. 27) is granted.

2) Judgment will be entered accordingly.

June 23, 2020.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

[3] As an alternative argument, UPRR claims it is entitled to summary judgment because at the time the lawsuit was filed, Brown was not a duly appointed personal representative for Jackson. Since I find the claims are time barred, I need not thoroughly address this argument, I note, however, that after the complaint was filed, Brown was appointed to pursue this action on Jackson's behalf. It would seem this action, which corrected the capacity to sue issue and rendered the erroneous capacity to sue allegations in the initial complaint as truthful statements, would relate back to the filing of the initial complaint. Crowder v. Gordons Transports, Inc., 387 F.2d 413, 414 (8th Cir. 1967) (explaining "relation back" is a procedural issue governed by the Federal Rules of Civil Procedure and holding the post-filing appointment of a personal representative to pursue wrongful death and survival actions related back to the date the initial complaint was filed); see also Thomas v. Bd. of Trustees of the Nebraska State Colleges & Joshua Keadle, No. 8:12-CV-412, 2014 WL 12577380, at *3 (D. Neb. Feb. 3, 2014) (Gerrard, J.).